FILED

16 OCT 25 AM II: 04

CLERK. U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**NEOGENOMICS LABORATORIES, INC.,**
a Florida Corporation,

      Plaintiff,

**v.**

**CIVIL ACTION NO.** 2:16 CV-790-FtM-99MRM

**NEO NEW ONCOLOGY AG,**
a German business entity,
and **VARIOUS JOHN DOES,**
**JANE DOES**, and **ABC COMPANIES,**

      Defendants.

_____/

### VERIFIED COMPLAINT

#### INJUNCTIVE RELIEF SOUGHT

Plaintiff, **NEOGENOMICS LABORATORIES, INC.,** a Florida corporation

(hereinafter "Plaintiff" or "**NEOGENOMICS**"), by and through its undersigned counsel,

hereby files this Verified Complaint against Defendants, **NEO NEW ONCOLOGY AG,**

a German business entity, and **VARIOUS JOHN DOES, JANE DOES**, and **ABC**

**COMPANIES,** (hereinafter collectively referred to as "Defendants" or "**NEO NEW**

**ONCOLOGY**"), and alleges, all upon information and belief, the following:

## JURISDICTION

1.  This is a Complaint for the various counts and wrongs set forth herein.

2.  This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, and the Lanham Act, including 15 U.S.C. §§ 1114, 1116, 1117 and 1125 and related statutes and the principles of pendent jurisdiction.

3.  The matter in controversy exceeds, exclusive of interest and costs, the sum of TEN MILLION DOLLARS ($10,000,000.00).

4.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(a), in that Defendants continually advertise, solicit and/or conduct business in this District, Plaintiff's claim arises in and a substantial part of the events or omissions giving rise to the claims and the specific harm and damage to Plaintiff as complained of hereinafter have occurred here, are occurring here and will occur here if not enjoined by the Court.

## THE PARTIES

5.  Plaintiff is a Florida corporation, organized and existing under the laws of the State of Florida and does business in interstate commerce and within this Middle District, with its principal places of business in this Middle District.

6.  Defendant, **NEO NEW ONCOLOGY AG**, at all times material to the issues presented herein, was and is engaged in the activities complained of hereinafter in interstate commerce and in competition with Plaintiff, had regular and systematic contacts with and currently does substantial business within this Middle District.

**Page 2**

7.    Defendants, **VARIOUS JOHN DOES, JANE DOES,** and **ABC COMPANIES,** are individuals and/or business entities who, along with the other herein named Defendants, are successors in interest to and/or have engaged in the unauthorized and illegal acts complained of herein. The identities of these unnamed Defendants and the details of their legal associations with the named Defendant herein presently are not and cannot be known to Plaintiff.

8.    Defendants, either individually and/or acting by and through their principals, officers, agents, employees and other active, conscious and dominant forces behind the illegal activities of the other Defendants as complained of herein, had regular and systematic contacts with and currently does substantial business within this Middle District and have committed the acts complained of herein in interstate commerce and within this Middle District.

9.    Defendants, either individually and/or acting by and through their principals, officers, agents, employees and other active, conscious and dominant forces behind their activities, were acting in concert with or in joint ventures with the others at all times and were and are the agents of each other in doing the illegal and wrongful acts alleged herein and each was acting within the course and scope of such agency.

10.   Defendants have committed the acts complained of herein in this Middle District for their individual gain and profit, have purposely directed the torts complained of hereinafter into this Middle District, have caused harm to Plaintiff in this Middle District, and are subject to both the general and specific jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

The previous allegations set forth above and the following facts are common to all Counts asserted by Plaintiff hereafter in its Verified Complaint:

11. Plaintiff is a leading brand in its industry, and a well known and highly respected company providing certified clinical laboratory services to patients and medical professionals through the United States and around the world.

12. Plaintiff's expertise in the field of cancer and genetics diagnostic testing is particularly recognized as leading the industry in the fastest growing segment of the laboratory industry.

13. Plaintiff is one of the fastest growing cancer genetics lab in the United States, and is believed to have the most comprehensive cancer testing menu in the industry.

14. Plaintiff's goods and services are offered to the public by many and various means and modes, and nationally throughout the United States in commerce.

15. From its inception, Plaintiff has succeeded in separating itself from the competition and in demonstrating a unique commercial identity.

16. Plaintiff has accumulated valuable goodwill associated solely with Plaintiff's business which has resulted in an ever expanding market share, business presence, commercial success, unsolicited publicity and great public acceptance.

17. Plaintiff's success and enviable reputation have made it a leader, if not the leader, in its field.   Plaintiff's success is in large part due to Plaintiff's diligence and hard work, and also due to Plaintiff's creation of and significant investment in its portfolio of valuable intellectual property, including trademarks, owned

exclusively by Plaintiff, and which are in fact source identifiers, designations of

origin and valuable brands and brand identity which distinguish Plaintiff's products

from all others.

## PLAINTIFF'S TRADEMARK RIGHTS

18.   Among many other trademarks owned by Plaintiff, Plaintiff is the owner of all

right, title and interest in and to the following trademarks:

- **NEOGENOMICS**, U.S. Trademark Registration No. 3251678, a registration which has become *incontestable* according to United States trademark law;

- **NEOGENOMICS LABORATORIES**, U.S. Trademark Registration No. 4857621;

- **NEOGENOMICS**, U.S. Trademark Registration No. 4975880;

- **NEOGENOMICS LABORATORIES**, U.S. Trademark Registration No. 4975881;

- **NEOGENOMICS LABORATORIES**, U.S. Trademark Registration No. 4975882;

- **NEOPATH**, U.S. Trademark Registration No. 4818409;

- **NEOSITE**, U.S. Trademark Registration No. 4502829;

- **NEOARRAY**, U.S. Trademark Registration No. 4344271;

- **NEOTYPE**, U.S. Trademark Registration No. 4340040;

- **NEOFISH**, U.S. Trademark Registration No. 4177943;

- **NEOSCORE**, U.S. Trademark Registration No. 4983565;

- **NEOLINK**, U.S. Trademark Registration No. 5008433;

- **NEOFLOW**, U.S. Trademark Registration No. 4493222;

- **NEOLIQUID**, U.S. Trademark Serial No. 86861470;

- **NEOLAB**, U.S. Trademark Serial No. 86329907;

- **NEOCONNECT**, U.S. Trademark Serial No. 86267226; and

- **NEOUNIVERSITY**, U.S. Trademark Serial No. 86629250

as well as many other "NEO" marks, covering, among many other goods and services, scientific testing and research services in the field of human disease and human medical conditions; medical research services in the field of human disease and human medical conditions; clinical scientific testing services and medical research and testing in the field of human disease and human medical conditions; medical diagnostic testing services in the field of human disease and human medical conditions   (hereinafter "Plaintiff's NEO Family of Marks" or "Plaintiff's Marks").

19.   Plaintiff's NEO Family of Marks are well known to the relevant consuming public, fully valid, legally subsisting and enforceable.

20.   Plaintiff's goods and services have been widely advertised and extensively offered to the public under Plaintiff's Marks throughout the United States and in commerce by Plaintiff long before Defendants' infringing use, as is described herein.

21.   Plaintiff's Marks have become, through widespread and favorable public acceptance and recognition, assets of substantial value as symbols of Plaintiff, its quality goods, services and goodwill.

22.   Plaintiff has used Plaintiff's Marks to establish a strong connection between the same and the goods and services advertised to the public.

23.   Plaintiff enjoys considerable success and an enviable reputation in its profession and commercial enterprises due in large part to its use of, and rights in, Plaintiff's Marks.

24.   Plaintiff's notable success is also the result of diligent efforts to create distinction in the marketplace by utilizing various designations of origin, including through the use of its trademarks.   Plaintiff's NEO Family of Marks were innovated and developed at no small expense, and are the subject of extensive marketing campaigns and advertising expenditures and create brand awareness and educate the relevant consuming public as to the unique source of our client's products. The result is a favorable consumer awareness and brand identity that is unique to our client and unmatched in the marketplace both in the United States and abroad.

25.   Plaintiff openly, prominently and conspicuously uses and promotes its goods and services under Plaintiff's Marks to create and benefit from brand and trade identity and to distinguish its goods and services from those sold by others.

26.   Plaintiff has made considerable expenditures to build its brand so successfully.   As a result of Plaintiff's many investments of time and money, Plaintiff's Marks have become synonymous with Plaintiff's high quality goods and services, have become well known and the same have resulted in valuable goodwill.

27.   Plaintiff's Marks have been widely, prominently and continuously advertised and promoted to the public through many and various means and modes, including via the internet on Plaintiff's website at www.neogenomics.com.

28.   By reason of such advertising and promotion, the public has come to recognize

Plaintiff's goods and services offered under Plaintiff's Marks as emanating from Plaintiff.

29.     Plaintiff enforces its rights in Plaintiff's Marks in order to protect itself and the public from infringers and in order to preserve what Plaintiff has worked hard to build as a valuable brand and highly successful company.

## THE ILLEGAL ACTS OF DEFENDANTS

30.     Defendants are and have been, openly, regularly and actively engaged in the unauthorized, infringing, unlicensed, and imitative use of the same, and/or confusingly similar trademarks, NEO, NEO NEW ONCOLOGY, NEO NEO BASIC, NEO NEO PLUS, NEO NEO LIQUID and NEO NEO PRIME (hereinafter the "Infringing Marks"), all for the same or similar goods and services, in the same or similar geographic areas, in commercial advertising and in direct competition with Plaintiff.

31.     On or about January 9, 2016, the named Defendant, NEO ONCOLOGY AG, applied for federal registration the mark NEO and design, Serial No. 86870074. On or About May 2, 2016, the United States Patent & Trademark Office, by formal written action, refused registration to Defendant and specifically cited Plaintiff's existing trademark registrations as the basis for the refusal. The U.S. Examining Attorney specifically stated that Defendant's applied for mark so resembled Plaintiff's that "*it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant [Defendant*

*NEO NEW ONCOLOGY] and the registrant [Plaintiff NEOGENOMICS]"*.

32.    On or about January 9, 2016, the named Defendant, NEO ONCOLOGY AG, applied for federal registration the mark NEO NEW ONCOLOGY and design, Serial No. 86870136.   On or About May 2, 2016, the United States Patent & Trademark Office, by formal written action, refused registration to Defendant and specifically cited Plaintiff's existing trademark registrations as the basis for the refusal. The U.S. Examining Attorney specifically stated that Defendant's applied for mark so resembled Plaintiff's that *"it is __likely__ a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant [Defendant NEO NEW ONCOLOGY] and the registrant [Plaintiff NEOGENOMICS]"*.

33.    On or about January 9, 2016, the named Defendant, NEO ONCOLOGY AG, applied for federal registration the mark NEO NEO PRIME and design, Serial No. 86870469.   On or About May 2, 2016, the United States Patent & Trademark Office, by formal written action, refused registration to Defendant and specifically cited Plaintiff's existing trademark registrations as the basis for the refusal. The U.S. Examining Attorney specifically stated that Defendant's applied for mark so resembled Plaintiff's that *"it is __likely__ a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant [Defendant NEO NEW ONCOLOGY] and the registrant [Plaintiff NEOGENOMICS]"*.

34.    On or about January 9, 2016, the named Defendant, NEO ONCOLOGY AG,

applied for federal registration the mark NEO NEO LIQUID and design, Serial No. 86870472. On or About May 2, 2016, the United States Patent & Trademark Office, by formal written action, refused registration to Defendant and specifically cited Plaintiff's existing trademark registrations as the basis for the refusal. The U.S. Examining Attorney specifically stated that Defendant's applied for mark so resembled Plaintiff's that "*it is __likely__ a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant [Defendant NEO NEW ONCOLOGY] and the registrant [Plaintiff NEOGENOMICS]*".

35. On or about January 9, 2016, the named Defendant, NEO ONCOLOGY AG, applied for federal registration the mark NEO NEO PLUS and design, Serial No. 86870475. On or About May 2, 2016, the United States Patent & Trademark Office, by formal written action, refused registration to Defendant and specifically cited Plaintiff's existing trademark registrations as the basis for the refusal. The U.S. Examining Attorney specifically stated that Defendant's applied for mark so resembled Plaintiff's that "*it is __likely__ a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant [Defendant NEO NEW ONCOLOGY] and the registrant [Plaintiff NEOGENOMICS]*".

36. On or about January 9, 2016, the named Defendant, NEO ONCOLOGY AG, applied for federal registration the mark NEO NEO BASIC and design, Serial No. 86870482. On or About May 2, 2016, the United States Patent & Trademark

Office, by formal written action, refused registration to Defendant and specifically cited Plaintiff's existing trademark registrations as the basis for the refusal. The U.S. Examining Attorney specifically stated that Defendant's applied for mark so resembled Plaintiff's that "*it is _likely_ a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant [Defendant NEO NEW ONCOLOGY] and the registrant [Plaintiff NEOGENOMICS]*".

37. The United States Trademark Examining Attorney also found concerning Defendant's applications, that there was indeed a "*similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services*" to Plaintiff's mark.

38. Further, Defendants are offering their goods and services to the public under the Infringing Marks, in interstate commerce by various means and modes, including but not limited to the regular and systematic offering and delivery of goods and services to residents of the state of Florida over the internet on its website at **www.newoncology.com**, which is accessed by, accessible to, and directed to Florida residents.

39.   Defendants' usage appears to include, for example, the material below:



NEOliquid identifies clinically relevant, cancer-specific point mutations, insertions, deletions and gene fusions in circulating cell-free DNA down to an allele frequency of 0.1%. In addition, NEOliquid detects copy number alterations on tiny amounts of circulating tumor DNA.

NEOliquid enables indirect analysis of both the primary tumor as well as its metastases, capturing the entire heterogeneity of the disease. NEOliquid is suitable both for disease monitoring to control treatment efficacy and to observe emergence of possible resistance mechanisms.

Sample requirements: two to three 10 ml collection tubes (provided by New Oncology); samples can be shipped at ambient/room temperature.

NEOliquid panel of tested genes:

For more information on NEOliquid, please contact us.



Prospective registry for molecular diagnostics in lung cancer patients



| Home | About us | Diagnostics | NEOlung | Publications | News | FAQs |



## personalized

Cancer is a disease of the genome and can be treated individually with targeted therapies. Our NEOplus test is capable of identifying the specific genome alterations responsible for each cancer type. This enables the treating physician to select the most suitable targeted therapy for the patient.

40. This public offering for sale of competing goods and services under the Infringing Marks is, would be, and/or has been without the consent, permission or authority of Plaintiff, as Defendants do not have any legitimate rights in or licenses to the Infringing Marks.

41. The Infringing Marks have been used by Defendants and offered to the public utilizing this District as a forum for their infringing activities with knowledge of the source of the Infringing Marks and of the fact that the Infringing Marks are neither genuine nor authorized by Plaintiff.

42. Defendants have engaged in the transaction of business and the commission of tortious acts in Florida, and are subject to both the general and specific jurisdiction of this Court.

43. By using the Infringing Marks and offering goods and services for sale thereunder,

Defendants have misrepresented and falsely described to the general public the origin and source of Defendants goods and services so as to deceive the public and deliberately create the likelihood of confusion, including but not limited to initial interest confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and services, or commercial activities by the ultimate purchaser as to both the source and sponsorship of Defendants' goods and services.

44.     Defendants' goods and services offered under the Infringing Marks, to the extent that they are not the genuine article of Plaintiff and not fully authorized by Plaintiff, are or may be inferior in quality to the goods and services authorized to be sold by Plaintiff, and the sale thereof has, does, and will continue to damage and dilute the goodwill Plaintiff has developed in connection with offering legitimate, authorized goods and services under Plaintiff's Marks.

45.     Defendants, with full knowledge of the notoriety of Plaintiff's Marks, intended to, and did, trade on the goodwill associated with Plaintiff, and have misled and will continue to confuse, deceive and mislead the public into assuming a connection between Plaintiff and Defendants' goods and services by Defendants' offering to the public of their goods and services under the Infringing Marks.

46.     Defendants have advertised, distributed, offered for sale, and/or sold in the State of Florida, within this Middle District and in interstate commerce, related goods and services under the Infringing Marks which are confusingly similar to Plaintiff's

Marks, thus creating the likelihood of confusion, deception, and mistake as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and services or commercial activities.

47.   The use by Defendants of the Infringing Marks constitutes a knowing use of a false designation of origin and a false description or representation that wrongly and falsely designates Defendants' goods and services as originating from or connected with Plaintiff and further constitutes utilizing false descriptions of fact or misrepresentations in commerce.

48.   The imitation, reproduction, and unauthorized use of the Infringing Marks causes irreparable injury to Plaintiff, including injury to its business reputation and dilution of the distinctive quality of Plaintiff's Marks.

49.   Defendants' use of the Infringing Marks has, does, and is likely to permit Defendants to pass off their goods as those of Plaintiff's, all to the detriment of Plaintiff and to the unjust enrichment of Defendants.

50.   Defendants' use of the Infringing Marks has caused, does cause, and is likely to continue to cause, damage to Plaintiff by tarnishing the valuable reputation and image associated with Plaintiff and its and services and services.

51.   By Defendants' many and continuing unlawful activities and misrepresentations, and violations of Plaintiff's trademark rights, members of the consuming public are likely to, and do, believe that Defendants' goods and services are related to, emanate from or are associated with Plaintiff.

52.    Defendants' unlawful activities results in irreparable harm and injury to Plaintiff.

Among other harms, it:

a.    deprives Plaintiff of its absolute right to determine the manner in which its goods and services are presented to the general public;

b.    deceives the public as to the origin and sponsorship of such goods and services;

c.    wrongfully trades upon and cashes in on Plaintiff's reputation and exclusive rights in its trademarks;

d.    to the extent Defendants' goods and services are or may be of inferior quality or unauthorized for sale or distribution, irreparably harms and injures Plaintiff's reputation; and

53.    Among the other relief sought herein, Plaintiff is entitled to an injunction restraining Defendants, their principals, officers, agents, servants, employees, and attorneys, and all persons acting in concert with them, from engaging in any further acts in violation of the applicable law.

54.    Plaintiff is further entitled to recover from Defendants the damages available under the applicable laws, including but not limited to actual damages, treble damages and/or statutory damages, interest, and attorney fees and costs it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of the acts as alleged herein.   At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiff.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. §§ 1114, 1116 and 1117)**

55.    Defendants' acts, as alleged herein, including the use, advertising and displaying of

the Infringing Marks, constitute federal trademark infringement, which is causing,

or is likely to cause, confusion, mistake, deception, and/or misrepresentation, in

violation of 15 U.S.C. §§ 1114, 1116 and 1117.

56.    Defendants' use of the Infringing Marks, as alleged herein, have caused irreparable

injury and damage to Plaintiff and, unless restrained, will continue to do so.

57.    As a result, Plaintiff has suffered damages with interest.

58.    Plaintiff has no adequate, complete remedy at law.

**COUNT II**
**FEDERAL UNFAIR COMPETITION**
**FALSE DESIGNATION OF ORIGIN**
**FALSE DESCRIPTION**
**(15 U.S.C. § 1125)**

59.    Defendants' acts, as alleged herein, including the use, advertising and displaying of

the Infringing Marks, constitute federal unfair competition, false designation of

origin and false description of fact, all of which is causing, or is likely to cause,

confusion, mistake, deception, and/or misrepresentation, in violation of

15 U.S.C. §1125.

60.    Defendants' use of the Infringing Marks, as alleged herein, have caused irreparable

injury and damage to Plaintiff and, unless restrained, will continue to do so.

61.    As a result, Plaintiff has suffered damages with interest.

62.   Plaintiff has no adequate, complete remedy at law.


## COUNT III
## FLORIDA TRADEMARK INFRINGEMENT
## UNFAIR COMPETITION
## FALSE DESIGNATION OF ORIGIN
## (Florida Statutes § 495.131 et seq.)

63.   Defendants' acts, as alleged herein, constitute infringement of Plaintiff's rights

pursuant to Florida Statutes § 495.131 et seq, Florida unfair competition, and

Florida false designation of origin.

64.   Defendants' acts, as alleged herein, have caused irreparable injury and damage to

Plaintiff, and, unless restrained, will continue to do so.

65.   As a result, Plaintiff has suffered damages with interest.

66.   Plaintiff has no adequate complete remedy at law.


## COUNT IV
## FLORIDA INJURY TO BUSINESS REPUTATION AND DILUTION
## (Florida Statutes § 495.151)

67.   Defendants' acts, as alleged herein, have caused, and are likely to cause, damage to

Plaintiff by injuring Plaintiff's valuable reputation and by diluting the

distinctiveness of Plaintiff's Marks in violation of Florida Statutes § 495.151.

68.   Defendants' acts, as alleged herein, have caused irreparable injury to Plaintiff, and,

unless restrained, will continue to do so.

69.   As a result, Plaintiff has suffered damages with interest.

70.   Plaintiff has no adequate, complete remedy at law.

**WHEREFORE,** Plaintiff demands judgment against Defendants on all of the above Counts, and on each and every claim for relief set forth above and award it full relief including, but not limited to, the following:

a.    a preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

        i.    from causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's Marks, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities, or causing injury to business reputation, or dilution of the distinctiveness of Plaintiff's Marks, or Plaintiff's forms of advertisement;

        ii.    from directly or indirectly falsely designating or representing that any goods or services are authorized, approved, associated with, or originating from, Plaintiff;

        iii.    from directly or indirectly using the Infringing Marks or any confusingly similar variants, iterations, or forms thereof, which is likely to cause confusion or further irreparable harm to Plaintiff's business reputation or goodwill;

        iv.    from utilizing the Infringing Marks or any confusingly similar variants in any shape or manner;

        v.    from publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, advertisements, signs, or any other representations, regardless of the medium, which bear the Infringing Marks or any confusingly similar variants, and from otherwise unfairly competing in any way with Plaintiff;

        vi.    to deliver up to Plaintiff for destruction, at its option, all goods, literature, advertisements, business forms, signs, and any other representations, regardless of form, which are in, or come to be in, Defendants' possession, custody, or control and which bear

the Infringing Marks or any confusingly similar variants;

vii.      to notify their direct customers, agents, and representatives that the Infringing Marks or any confusingly similar variants are not connected with Plaintiff;

viii.      to immediately institute full compliance with any order entered by this Court, and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement, under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with;

and for:

b.      an accounting and payment of all profits gained by Defendants while engaging in the acts complained of herein;

c.      all monetary damages suffered by Plaintiff, in an amount to be determined, including statutory, enhanced or treble damages;

d.      an Order requiring Defendants to disseminate pre-approved corrective advertising to all vendors, clients, customers, prospective customers, agents and representatives to address the likelihood of confusion caused by Defendants' acts;

e.      an Order directing the cancellation, forfeiture or transfer of the Infringing Marks to Plaintiff;

f.      an award of all attorneys fees and costs as allowed by law;

g.      and such other interlocutory and permanent relief as this Court may deem just and proper.


Respectfully submitted,


/s/JENNIFER L. WHITELAW
JENNIFER L. WHITELAW
WHITELAW LEGAL GROUP
Trial Counsel for Plaintiff
**NEOGENOMICS LABORATORIES, INC.**
Florida Bar No. 0938629
3838 Tamiami Trail North, Third Floor
Naples, Florida 34103
Telephone:  239-262-1001
Facsimile:  239-261-0057
Email: usdcmail@whitelawfirm.com

## **VERIFICATION**

I DECLARE, under penalty of perjury, that I am duly authorized in the premises, have read

the foregoing Complaint and the same is true and correct.

Executed this 24th day of October, 2016.

**NEOGENOMICS LABORATORIES, INC.,**

By:   /s/STEVEN C. JONES
         Executive Vice President, Finance
         A Duly Authorized Representative